UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 03-cr-10404-NG |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| RONALD CAVALIERE (02) | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The defendant Ronald Cavaliere respectfully submits the memorandum of law in support of his motion to suppress evidence.

### STATEMENT OF FACTS[1]

On April 16, 2002, a search warrant was issued from the Suffolk County Superior Court for 9 Wildwood Drive, Milford, Massachusetts, upon the application of Trooper Timothy Babbin of the Massachusetts State Police. This application generally reported that a narcotics investigation had begun in New Hampshire at some time prior to November of 2001. In November of that year, Sergeant Michael Hambrook of the New Hampshire State Police contacted the narcotics unit of the Massachusetts Office of the Attorney General, informing them that the investigation was leading them to a Massachusetts resident, Ronald Cavaliere, and that their assistance was being invited to further their investigation in light of Massachusetts activities. Sgt. Hambrook informed the narcotics officers that he had obtained information, through a confidential informant, that the defendant had expressed a willingness to make a large-scale purchase of

---

[1] The following facts are derived from police reports, a search warrant affidavit, and a previous suppression motion that was filed in state court in Commonwealth of Massachusetts v. Ronald Cavaliere, WOCR2002-00790.

1

marijuana and cocaine. Believing that this information presented an opportunity for the operation of a "reverse sting," the informant began assisting the New Hampshire State Police by agreeing to consent to and participate in communications with the defendant that would be monitored by Sgt. Hambrook. A number of such communication events then occurred over the next several months, leading to April 15, 2002. During that span of time, the defendant asked for and received from the informant samples of both marijuana and cocaine, the first occasion being November 12, 2001, when the defendant arrived in New Hampshire as a passenger in a motor vehicle driven by another. After providing a sample of marijuana to the defendant, police then followed him in the vehicle to his home at 9 Wildwood Drive, Milford. A second such meeting between the CI and Cavaliere occurred on February 20, 2002, in Manchester, New Hampshire, and it had been arranged in order that the defendant could obtain a sample of cocaine. During this meeting, the defendant told CI that he had the means for purity testing of the drugs at his home. Cavaliere also told the CI during these conversations, which were overheard by the New Hampshire police, that he was involved in a large-scale operation and had been for a long time, that he did not keep his money in banks, and that he could not "show him money." The defendant had also told the informant that although he has several connections to obtain narcotics, he was interested in acquiring any that the informant could provide. The defendant was again followed from this meeting directly to his home. Later that same day, the defendant contacted the informant and told him that the cocaine tested well and that he wanted to proceed with a 25 kilogram purchase.

     Cavaliere later reported to the informant that he was not able to obtain the funds to complete the cocaine buy. On April 12, 2002, the informant called the defendant to

discuss a possible 300 pound marijuana purchase by the informant. The defendant responded that "his guy" would have it available by April 15th, at which time the defendant could provide the informant with a sample; if acceptable, the transaction could be completed later the same day or the next. These law enforcement officers and others took up surveillance positions at the defendant's home on April 15, 2002. The informant and the defendant spoke several times that day and the defendant told him that he had hurt his back playing golf, that the transaction could not go forward that day but that he and his associate could bring the marijuana to the CI in New Hampshire the following day.

    On April 16, 2002, Tpr. Babbin filed an application for a search warrant for the defendant's residence (Ex. A), intending to execute it in connection with the defendant's delivery of marijuana to the informant in New Hampshire. The warrant sought currency, paraphernalia and instrumentalities of the defendant's narcotics business, including scales, packing materials and documentary evidence of the defendant's sources of drugs, customers, storage, finances, and the identities of persons in possession of the premises.

    The transaction, which was scheduled to occur on April 16, 2002 in New Hampshire, did not go forward, due to Cavaliere's continuing back trouble. The following day, April 17th, the defendant and the informant made arrangements for the CI to take delivery of the marijuana at the defendant's house. On that date, officers again took up surveillance positions around the defendant's home. At approximately 3:45 p.m., they observed Frank Fister drive a Chevrolet Tahoe onto the defendant's driveway and park near the garage. The defendant's wife came out of the home first, followed by the defendant, and they both greeted Fister. After conversation with the defendant, Fister

3

then turned the SUV around and backed the vehicle up to the garage doors. Cavaliere then notified the informant that the drugs were there. The CI arrived at the premises soon thereafter. Cavaliere opened the rear doors of the Tahoe and showed the marijuana, contained in plastic bags, to the informant. Telling the defendant that he was then going to get his money man, he left and the combined state police warrant execution team arrived.

As the police pulled their vehicle into the driveway, in front of the Tahoe thereby blocking its exit, and while exiting the vehicle to approach the house, several officers, including Babbin and Hambrook, when by the Tahoe, the driver's door window being partly down. The troopers also looked inside the front windows, and allegedly observed a number of filled plastic trash bags in the rear. They also allegedly smelled an odor of marijuana emanating from the Tahoe.

The officers then went to an area of an open breezeway, observing a door on their right at ground level, and a set of exterior stairs up to a deck. Some officers went to each. Among the first officers that approached the doors to the residence, Tpr. Babbin opened the closed but unlocked screen door and the officers stepped inside a kitchen to what they then observed to be an in-law apartment occupied by Catherine Dobay, Debra Cavaliere's 74-year-old mother, who was then seated at the kitchen table. After officers checked the apartment for other persons, they left. While that team of officers was making entry through that ground-level entrance, Sgt. Hambrook and other officers had climbed the stairs to the deck and observed the defendant and Frank Fister in the room immediately in from the deck, namely, the kitchen. The officers entered and secured all persons present: the defendant, his wife Debra Cavaliere, and Frank Fister.

4

The officers then conducted their search, discovering cocaine on the defendant's person and in his wife's purse, and the bags of marijuana in the Tahoe. In addition, in a briefcase on the front seat of the Tahoe was in excess of 100 grams of cocaine, $9000.00 in cash, a checkbook, credit cards and prescriptions of Fister.

## ARGUMENT

The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the seizure itself." United States v. Montoya Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); *see also* New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

**A.    The Search Was Invalid Due to the Failure of the Executing Officers to Knock and Announce Their Presence Prior to Entering the Defendant's Residence.**

The Supreme Court has held that the Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock and announce their identity and purpose before attempting forcible entry, apart from certain narrowly-defined exceptions. *See* Wilson v. Arkansas, 514 U.S. 927 (1995); Richards v. Wisconsin, 520 U.S. 385, 393(1997) (striking down per se rule that officers are never required to knock and announce their presence when executing a search warrant in felony drug investigations, noting that "while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every investigation will pose these risks to a substantial degree"). "In order to justify a 'no-knock' entry, police must have a reasonable suspicion that knocking and announcing their presence, under the

particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards at 394.

The search warrant in this case did not authorize the executing officers to enter the premises without announcement. At an evidentiary hearing, the defendant, his wife and his mother-in-law who was present in her apartment located at 9 Wildwood Drive, will offer testimony that the police failed to announce their presence prior to entering the premises. Under the circumstances of this case, the police wholly lacked proper justification to enter 9 Wildwood Drive without first knocking and announcing their presence. Richards, *supra*. Police were not alerted to the presence of guns or other weapons, nor would it have been reasonable to believe that anyone on the premises would have been able to destroy the three hundred pounds of marijuana in the Tahoe, which was parked in the driveway.

### B.   The Search Was Invalid Because It Went Beyond the Scope of the Warrant

In the present case, the Application for the Search Warrant requested permission to search only the premises located at 9 Wildwood Drive, Milford, Massachusetts. The Search Warrant itself authorized that search, but it did not authorize the search of anyone's person, nor did it authorize the search for property in the possession of any person. More importantly, the Search Warrant contained the following specific provision: "You. . . are not also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." (Ex. B) (emphasis added).

6

The search of the defendant's wife and her pocketbook, and the search of Frank Fister, Fister's briefcase, and Fister's truck, transformed the search warrant into a defective general warrant in violation of his rights as guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution.

As a preliminary matter, the defendant asserts that he had a legitimate expectation of privacy in the property searched. The threshold inquiry in reviewing the validity of a search or seizure is whether the defendant's own Fourth Amendment rights have been violated. United States v. Padilla, 508 U.S. 77, 81-82, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993); United States v. Dunning, 312 F.3d 528, 531 (1st Cir. 2002). In determining whether a defendant has shown a subjective privacy interest, the First Circuit has "required little more than evidence that defendants made some minimal effort to protect their property or activities from warrantless intrusions." United States v. Cardona-Sandoval, 6 F.3d 15, 20-21 (1st Cir. 1993).

In the case at bar, the property searched was all within the cartilage of 9 Wildwood Drive. Furthermore, the Government has moved for forfeiture of defendant's assets, including the real property located at 9 Wildwood Drive, based in part on the allegation that the defendant possessed property to facilitate the commission of the crime with which he has been charged. By so charging, the Government has, in effect, acknowledged that the defendant had a privacy interest in the property that was searched.

"The First Circuit has not, [] ruled on the validity of 'all persons' warrants," Quiles v. Kilson, 337 F.Supp.2d 224, 229 (D.Mass. 2004), and the defendant does not today urge the court to reach such a decision on this motion, for it is unnecessary to reach such a conclusion. The search warrant in this case explicitly stated that the officers were

7

not commanded or authorized to search persons not named on the premises, and by doing so, the officers exceeded the clear boundaries of the search warrant.

Even in Massachusetts courts, "all persons" search warrants are not authorized unless the presence of special circumstances is shown to exist. In Commonwealth v. Souza, 42 Mass. App. Ct. 186, 187 (1997) the court stated:

> Appellate review of a search based exclusively upon the "any person present" language of a search warrant demands strict scrutiny of the warrant's supporting affidavit in order to determine whether the search was valid. Commonwealth v. Smith, 370 Mass. 335, 344, cert. denied, 429 U.S. 944 (1976). Only in special circumstances will a search warrant aimed principally at the premises also be held validly to include, the search of any person present. See Commonwealth v. Baharoian, 25 Mass. App. Ct. 35, 38, 40 (1987) ("Any person present language" in otherwise valid warrant did not empower the police to search persons in the store not named or described in the warrant where there was no "reasonable basis for anticipating that everyone present" was engaged in the illegal gaming operations.). Only a "narrowly circumscribed range of searches," based upon "any person present" language, are consistent with the Fourth Amendment. Smith, 370 Mass. at 342. See also Commonwealth v. Pellier, 362 Mass. 621, 625 n.3 (1972) (any persons present clause "lacks specificity and is of dubious meaning").

Thus, even under state law conceptions of the "any persons" warrant, the search warrant in this case fails to justify the search of Fister and the defendant's wife. Fister is not named in the Application and Affidavit in Support of Application for Search Warrant, nor is any criminal conduct ascribed to the defendant's wife. Further, the warrant itself limited the locus of the search to the physical premises. The affidavit supporting the search of Fister's person and motor vehicle and the defendant's wife and her pocketbook was insufficient particular to satisfy constitutional and statutory standards.

Other jurisdictions have held that where a search warrant is silent as to whether officers are authorized to search all persons at a specific location, police officers, without more, are unauthorized to search other persons at the premises during the execution of the

8

search warrant.  *See generally,* State v. Reid, 319 Or. 65, 71 (1994) (search warrant for a specified residence and all its occupants based only on an informant's having seen and bought drugs there, was held invalid for lack of probable cause as to a non occupant who was found in the residence at the time of the warrant execution) State v. Ortega, 114 N.M. 193, 197 (1992), aff'd 117 N.M. 160, 163 (1994). *See also* State v. Pecha, 225 Neb. 673, 676, 678 (1987) (warrant for premises and "John and/or Jane Doe who resides or is in control of the afore described premises, intended as a "catch-all for anybody that might be inside the residence," was invalid as not based on probable cause where the premises to be searched was acknowledged to be a residence at which persons engaging in both illegal activity and legal activity might be found) at 190.  Thus, the searches of Fister and his possessions, and of the defendant's wife and her pocketbook, were unlawful in this case, especially where the search warrant explicitly stated that the officers were <u>not</u> authorized to search other persons on the premises.

The Trooper Babbin's affidavit is silent as to the observation of criminal activity at the locus to be searched and as to whether any person apparently unconnected with the suspected illegal activity had been seen at the premises.  The underlying circumstances failed to demonstrate probable cause to believe that persons present would have been involved with the sale and distribution of marijuana or other controlled substances, and furthermore, nothing occurred during the execution of the search warrant which would have given rise to authorization to search Fister or the defendant's wife.

### C.  The Search Was Invalid Because There Was a Lack of Probable Cause for the Issuance of the Search Warrant

There is little question that the affidavit in support of the challenged search warrant establishes probable cause to believe that the defendant was committing a crime

9

related to the distribution of marijuana and cocaine. "Although there need not be absolute proof that an alleged drug dealer keeps his drugs, records, etc., at his home, there must be some indication that his home is implicated to warrant the major intrusion of a search." U.S. v. Kenney, 595 F.Supp. 1453, 1461 (D.Me. 1984) (citing U.S. v. Gramlich, 551 F.2d 1359 (5th Cir. 1977). "Without more than merely the statement in the affidavit that [the defendant] has committed a drug offense the Court cannot find that there was adequate probable cause to support issuance of the warrant to search his house." Kenney, at 1461 (citing U.S. v. Flanagan, 423 F.2d 745, 747 (5th Cir. 1970)).

In this case, there was no specific information in the affidavit which tied the defendant's residence to illegal drug transactions, other than the fact that he lived at the premises. A discerning appraisal of the affidavit in support of the challenged warrant fails to provide reliable specific information placing illegal drugs or drug transactions at 9 Wildwood Drive in the past.

That the affidavit provided probable cause to believe that the defendant was a drug dealer is not seriously disputed. However, courts in the First Circuit have held:

> Establishing probable cause to believe that an individual has engaged in criminal activity does not automatically lead to the conclusion that probable cause exists to search that individual's home. 'The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.' Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); see also United States v. Savoca, 739 F.2d 220, 225 (6th Cir.1984) ('[T]he existence of probable cause to arrest will not necessarily establish probable cause to search.'). The Government's position, permitting law enforcement officers' general opinions about the behavior of drug traffickers in the abstract to satisfy the nexus requirement, would essentially eviscerate these principles.

U.S. v. Feliz, 20 F.Supp. 97, 102-03 (D.Me. 1998). Similarly:

> The Fourth Amendment protects the security of persons when they place themselves or their property within a constitutionally protected area such as a home. Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). The 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed....' United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). 'In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.' Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). To permit a search warrant based solely upon the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect. *See* U.S. v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994); *see also* United States v. Gomez, 652 F.Supp. 461, 463 (E.D.N.Y.1987).

U.S. v. Rosario, 918 F.Supp. 524, 531 (D.R.I. 1996) (holding that search warrant affidavit failed to give rise to a fair probability that the search of the defendant's residence would uncover contraband evidence of evidence of a crime) (internal citation amended).

In this case, the application for search warrant is based on Trooper Babbin's mere opinion that illegal drug activity may have been occurring at 9 Wildwood Drive. Nothing, via surveillance or observation of any controlled buy, established that there was any drug related activity occurred at 9 Wildwood Drive. Furthermore, the ease with which the police were able to determine the defendant's residence through a check of Registry and utilities records indicates a lack of counter-surveillance activity by the defendant. The affidavit in the instant case failed to establish a nexus between the defendant's residence at 9 Wildwood Drive and drug activity sufficient to establish probable cause to search that residence.

**D.    The Search Was Invalid Due to The Failure of the Search Warrant to Particularly Describe the Place to be Searched and the Failure of the Executing Officers to Limit Their Search to the Premises of the Defendant.**

"The Fourth Amendment commands that a warrant issue not only upon probable cause supported by oath or affirmation, but also 'particularly describing the place to be searched, and the persons or things to be seized.'" Berger v. State, 388 U.S. 41, 55 (1967). "The particularity requirement of the Fourth Amendment has a manifest purpose – to prevent general searches. By limiting authorization to search the specific areas and things for which there is probable cause to search, the requirement ensures that the search is carefully tailored to its justification, and does not resemble wide-ranging general searches that the Framers intended to prohibit." U.S. v. Leon, 468 U.S. 897, 963 (1984) (Stevens, J. concurring in part, and dissenting in part).

"[T]he probable cause requirement would be substantially diluted if a search of several living units could be authorized upon a showing that some one of the units within the description, not further identifiably, probable contained the items sought. This means that, in the absence of a probable cause showing as to all the living units so as to justify a search of them all, a search warrant directed at a multiple-occupancy structure will ordinarily be held invalid if it describes the premises only by street number or other identification common to all subunits located within the structure." 2 LaFave, Search and Seizure § 4.5(b), p. 579-80 (1978).

Nine Wildwood Drive, Milford, Massachusetts contains two separate residences as evidenced by Town records. At the time the search warrant was executed in this case, both residences were occupied by different people, and were searched. "Plainly, if the officers had known, or even if they should have known, that there were two separate

dwelling units [at the target location of the search warrant] they would have been obligated to exclude respondent's [dwelling] from the scope of the requested warrant." Maryland v. Garrison, 480 U.S. 79, 85 (1987). Here, a simple check of Town records relating to 9 Wildwood Drive would have alerted the executing officers to the fact that the locus was a two-family home, and thus the officers reasonably should have known that 9 Wildwood Drive was a two-family residence. The search of the premises in this case, included the second residence as well. Thus, the search warrant was invalid on its face, and constituted an illegal general warrant.

## Conclusion

For the foregoing reasons this Court should allow the defendant's Motion to Suppress Evidence seized during the execution of this unlawful warrant.

RONALD CAVALIERE
By his attorney:

/s/ MARK W. SHEA                                Dated: January 18, 2006
Mark Shea, Esq.
BBO No. 558319
SHEA, LaROCQUE & WOOD, LLP
47 Third Street, Suite 201
Cambridge MA  02141-1265
617.577.8722

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 18, 2006.


/s/ Mark W. Shea
MARK W. SHEA