```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
                                )
                                )
     v.                         )
                                )   No. 03-10404-NG
1. MICHAEL GRIFFIN,             )
2. RONALD CAVALIERE,            )
3. WILLIAM DAVID VENEY, and     )
4. RICHARD COLLADO,             )
                                )
          Defendants.           )
```

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT
EVIDENCE OF DEFENDANTS' DRUG USE AND PURCHASES**

The United States, by and through its counsel, Michael J. Sullivan, United States Attorney, and Rachel E. Hershfang, and Nathaniel R. Mendell, Assistant United States Attorneys, hereby moves in limine to admit testimony regarding uncharged drug activity by defendants Michael Griffin ("Griffin"), David Veney ("Veney"), and Richard Collado ("Collado"), both before and during the charged conspiracy. This evidence is critical to explain the relationship between each defendant and a government cooperating witness, as well as the relationship between Veney and Griffin. Equally importantly, the evidence is probative of the defendants' intent to engage in drug trafficking and to their lack of ignorance as to the nature of their cargo.

**I.   Anticipated evidence.**

The government expects to present its trial evidence through

various cooperating witnesses, each of whom was a participant in the charged drug conspiracy.[1]  All three cooperating witnesses are expected to testify that the cocaine transported by both Griffin and Veney was provided to the drivers in large duffel bags sealed with small padlocks, and that the duffel bags were not opened in the presence of the drivers (either upon pick-up, in Texas, or upon delivery, in Massachusetts).

CW-1 was the first to meet Griffin, Veney, and Collado, and was the person who enlisted each to participate in the conspiracy.  CW-1 is expected to testify that he had a drug-using or drug-distributing relationship with each of the defendants before he sought their assistance in transporting and/or evaluating the cocaine and marijuana he was dealing.

Specifically, CW-1 would testify that he met Veney because the two were neighbors in Marlborough in or about 1988.  In addition to some legitimate business dealings together (in a tile business, for example), CW-1 and Veney engaged in drug use together, and CW-1 provided Veney with cocaine for Veney's

---

[1] The defendants are aware of the names and identities of these individuals and have received substantial discovery about them, including their prior grand jury testimony, trial testimony, criminal records, impeachment information, and law enforcement reports describing proffer sessions with them.  All three of these witnesses are currently incarcerated.  For safety reasons, the government will not refer to them by name in this filing.  Instead, "CW-1" will refer to the Boston-based cooperating witness, "CW-2" will refer to the first Colorado-based cooperating witness, and "CW-3" will refer to the Colorado-based cooperating witness recruited by CW-2.

personal use.  Even after Veney moved from Massachusetts to Florida, CW-1 is expected to testify, he provided Veney with personal-use quantities of cocaine, sometimes sending the packages by Federal Express to Veney in Florida.

CW-1 is expected to testify that he first met Griffin through Veney, as Veney had a part-time job working in Griffin's moving business.  According to CW-1, Veney introduced Griffin to CW-1 because Griffin was looking for a cocaine source of supply. After the introduction, CW-1 also provided Griffin with marijuana for his personal use, as well as cocaine.  This relationship continued until the period explicitly charged in the indictment, and is reflected in CW-1's drug ledgers for this time period.

CW-1 is expected to testify that he met Collado in 1997 or 1998 through a mutual acquaintance.  The two met socially and would spend time together socially.  During this time, they used cocaine together.  Collado solicited marijuana from CW-1, and CW-1 provided the drug to him.  Over time, CW-1 provided Collado with larger and larger amounts of marijuana, first selling him pounds of marijuana, and then (during the period of the charged conspiracy) up to 50 pounds at a time.

## II. Evidence of the defendants' drug activity is directly probative of the charged crime.

This evidence falls into two categories:  with respect to Griffin's marijuana use and Veney's cocaine use, the drug-use evidence is 404(b) evidence of uncharged bad acts.  With respect

to Collado's marijuana purchases and Griffin's cocaine purchases (both for re-sale), the evidence is direct evidence of their participation in the charged conspiracy. These two categories are addressed below.

> **A. Evidence of Griffin's and Veney's drug use is admissible to explain the relationship among the conspirators and to show knowledge; although prejudicial, it is not substantially more prejudicial than probative and should be admitted.**

The evidence of Griffin's and Veney's marijuana and cocaine use is admissible under Federal Rule of Evidence 404(b) because, while it describes prior bad acts, it helps prove each defendant's knowledge of, and facility with, the drugs at issue in this case. It is thus probative of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The evidence also tends to explain CW-1's decision to invite each of these people into his drug-trafficking business.

With respect to Veney and Griffin, the government anticipates that one or more of them may claim ignorance with respect to the contents of the sealed duffel bags he was transporting, giving this evidence even greater probative value.[2] See, e.g., United States v. Landrau-Lopez, 444 F.3d 19, 24 (1st Cir. 2006) (defendant charged with transporting sealed duffel

---

[2] By motion filed January 16, Griffin stated his intent to do just that. See Docket no. 148 p.3.

4

bags of cocaine; court of appeals affirms admission at trial of evidence that defendant had earlier both transported a suitcase full of cocaine and stored cocaine for cooperating witness; evidence "probative of knowledge and intent" and of the "conspiratorial relationship between" defendant and cooperating witness).

As the Landrau-Lopez court reasoned, where a drug conspiracy is charged, and ignorance is a defense, admission of prior drug activity by the defendant is particularly probative. Id. (citing United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir.1988) ("[W]here ... the other bad act evidence is introduced to show knowledge, motive, or intent, the Rule 404(b) exceptions to the prohibition against character evidence have been construed broadly."). It is no bar that the anticipated evidence is of cocaine use rather than cocaine trafficking; as the Landrau-Lopez court reasoned, "[t]he other bad act need not be identical to the crime charged so long as it is sufficiently similar to allow a juror to draw a reasonable inference probative of knowledge or intent." Id. at 24 (citing United States v. Spinosa, 982 F.2d 620, 628 (1st Cir.1992) as holding that evidence of prior drug sales was "sufficiently similar to the crimes charged ... to be probative of the fact that [the defendant] was not merely an innocent driver who was involved in the [drug] transaction by accident") and United States v. Nickens, 955 F.2d 112, 124-25

(1st Cir.1992) (upholding, in a drug importation case, the district court's admission of a prior conviction for selling cocaine because it "was relevant to both [the defendant's] knowledge that there was cocaine in the suitcases and to his intent to distribute it").

In this case, as in Landrau-Lopez, the alleged prior acts pertain to the same drugs charged in the indictment.  The Landrau-Lopez court concluded that the testimony about these prior acts,

> especially when considered with Villegas' [the cooperating witness] testimony that he and Landrau had a longstanding personal relationship, is probative of knowledge and intent, see United States v. Garcia, 983 F.2d 1160, 1173 (1st Cir.1993) (prior drug crimes probative of knowledge and intent), and of the conspiratorial relationship between Landrau and Villegas, see United States v. Escobar-de Jesus, 187 F.3d 148, 169 (1st Cir.1999) ("In a conspiracy case, evidence of other bad acts ... can be admitted to explain the background, formation, and development of the illegal relationship, ... and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust.")

Landrau-Lopez, 444 F.3d at 24.

This evidence is not barred by Rule 403.  To prevail on such an argument, each defendant would have to show that the prejudice to him from admitting these facts is "unfair," and substantially outweighs the probative value described above.  See Landrau-Lopez, 444 F.3d at 24; United States v. Smith, 292 F.3d 90, 99-101 (1st Cir. 2002) (distinguishing fair from unfair prejudice).

6

Although evidence of other crimes invariably prejudices a defendant, "the prejudice is frequently outweighed by the relevancy [sic] of the evidence. . . ." <u>United States v. Francesco</u>, 725 F.2d 817, 822 (1st Cir. 1984) (citations omitted).  "The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded, [or] there would be precious little left in the way of probative evidence in any case."  <u>United States v. Carty</u>, 993 F.2d 1005, 1011 (1st Cir. 1993).

> **B. Evidence of Collado's purchase of marijuana for resale is direct evidence of his participation in the charged conspiracy.**

The analysis with respect to Griffin's and Collado's drug purchases for resale is even more straightforward.  The anticipated testimony about their dealings with CW-1 as customers is direct evidence of their participation in the charged conspiracy.  Although the dates on which CW-1 began selling Collado pounds of marijuana and Griffin cocaine pre-date January, 2000 (the "no later than" start-date alleged in the Superseding Indictment), the transactions are nonetheless part of the charged conspiracy.  With respect to Collado, the parties' marijuana dealings involved CW-2 and codefendant Ronald Cavaliere.  As to Griffin, it was Veney who made the introduction to CW-1, for the purpose of cocaine trafficking.  The sales are part of the charged conspiracy.  <u>See</u>  <u>United States v. Bello-Perez</u>, 977 F.2d

7

664, 669 n. 4 (1st Cir.1992) (indictment charging a conspiracy beginning at "unknown date" but "no later than" particular date does not preclude evidence related to events predating "no later than" date). As with the category of evidence above (drug-use), evidence of these defendants' drug involvement with CW-1 explains CW-1's solicitation of their further drug involvement (in transporting and evaluating cocaine) in the charged conspiracy.

**III. Conclusion.**

For the foregoing reasons (and any adduced at any hearing on this matter), the government respectfully submits that it should be allowed to elicit information about the defendants' drug use and dealings during its case in chief.

```
                              Respectfully submitted,
                              MICHAEL J. SULLIVAN
                              United States Attorney

                         By:  /s/ Rachel E. Hershfang
                              Rachel E. Hershfang
                              Nathaniel R. Mendell
                              Assistant U.S. Attorneys
                              (617) 748-3249/-3304
```

January 17, 2007

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and mailed to all those not participating in ECF.

```
                              /s/ Rachel E. Hershfang
                              Rachel E. Hershfang
```