BOOK 19438 PAGE 317

9800002469

139926

———————————[Space Above This Line For Recording Data]———————————

## OPEN-END MORTGAGE

THIS MORTGAGE (this "Security Instrument") is made as of December 11, 1997 .
The mortgagor is Ronald Cavaliere and Debra Cavaliere .
("Borrower").

This Security Instrument is given to    Wainwright Bank & Trust Company
with its principal place of business at 63 Franklin Street, Boston, Massachusetts 02110.
(the "Lender").

This Security Instrument secures to the Lender (i) the repayment of the debt evidenced by a Home Equity Line Note and Credit Agreement by and between the Lender and Borrower, and dated as of __December 11, 1997__, and all renewals, extensions and modifications thereof (the "Agreement"), (ii) the payment of all other sums, with interest, advanced in accordance herewith, including under *Paragraph 9* below, to protect the security of this Security Instrument, (iii) the performance of the covenants and agreements under this Security Instrument and the Agreement, and (iv) the repayment of any future advances, with interest thereon, made to the Borrower by the Lender under *Paragraph 1* below.

The agreement is an adjustable rate consumer revolving loan agreement pursuant to which the Lender has agreed to lend money to Borrower from time to time pursuant to an open-end credit plan as defined in section 1, Chapter 140D of the Massachusetts General Laws. The Maximum principal amount secured hereby is __$35,000.00__

For this purpose, the Borrower, in consideration of the debt evidenced by this Agreement, does hereby mortgage, grant and convey to the Lender and the Lender's successors and assigns, with power of sale and Mortgage Covenants the following described property located in the County of ___Worcester___, Commonwealth of Massachusetts:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE.

which has the address of 9 Wildwood Drive, Milford, MA 01757
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

THE BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record as of the date hereof.

LAW OFFICE OF KEITH W. MICHON, P.C.
330 BROADWAY
CAMBRIDGE, MA 02139
PH: 617-492-1122

M.B.A. 457D (1/1/95)
© Massachusetts Bankers Association 1995

Stock No. 61403

BOOK 19438 PAGE 318

The Borrower and Lender covenant and agree as follows:

**1. Open-End Mortgage.** This Security Instrument is an open-end mortgage and the Lender shall have all the rights, powers and protection to which the holder of any open-end mortgage is entitled, including, without limitation, all rights, powers and protection under Section 28B of Chapter 183 of the Massachusetts General Laws. The Borrower may borrow, re-pay and re-borrow such amounts as desired, subject to the terms and conditions of the Agreement. The amounts which the Borrower borrows and re-borrows under the Agreement shall be referred to in this Security Agreement as "Future Advances." These Future Advances, and the interest on these Future Advances, shall be secured by this Security Instrument.

At no time shall the principal amount of the debt secured by this Security Instrument exceed the maximum principal amount permitted to be outstanding under the Agreement. All future Advances shall be recorded on the books and records of the Lender. Lender reserves the right to extend the period of availability of Future Advances and the maturity of all amounts due under the Agreement without further amendment of this Security Instrument, which shall secure all amounts due under the Agreement as it may be so amended.

**2. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Agreement, all other fees and charges as provided in the Agreement, including, without limitation, the principal and the interest on any Future Advances. This Security Instrument secures payment of amounts due under the Agreement according to its terms, which are incorporated by reference into this Security Instrument, as the Agreement may be renewed, modified or extended from time to time.

**3. Application of Payments.** Unless applicable law requires otherwise, all payments received by the Lender under this Security Instrument and the Agreement shall be applied to reduce amounts owing to the Lender from the Borrower and from the maker(s) of the Agreement in whatever order the Lender, in its sole discretion, chooses.

**4. Variable Rate.** The Agreement provides for changes in the rate of finance charge, as more particularly described in the Agreement. All references to interest in this Security Instrument shall be the variable rate of finance charge set forth in the Agreement.

**5. Prior Mortgages and Deeds of Trust; Charges; Liens.** The Borrower shall perform all the Borrower's obligations, including the Borrower's covenants to make all payments when due, under all encumbrances affecting the property, including, without limitation, any prior mortgage, deed of trust or security agreement (any such mortgage a "Senior Mortgage"), and all condominium master deeds, bylaws, or other documents establishing any association of unit owners. The Borrower shall pay or cause to be paid all taxes, assessments, and other charges, fines and impositions attributable to the Property ("Impositions") which may attain priority over this Security Instrument, common area and facilities charges, and leasehold payments or ground rents, if any.

After the date of this Security Instrument, the Borrower shall not allow any lien or encumbrance to attach to the Property other than the lien for real estate taxes not yet due and payable. Without limiting the scope of the foregoing, the Borrower shall promptly discharge or bond over any lien which arises after the date of this Security Instrument and has priority over this Security Instrument unless Borrower contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property, and deposits with Lender money or other security acceptable to Lender to cover the amount of such lien. If the Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, the Lender may give Borrower a notice identifying the lien. The Borrower shall satisfy the lien or take one or more of the actions described above within 10 days of the giving of notice.

**6. Hazard or Property Insurance.** The Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as the Lender may require, including, without limitation, flood insurance. This insurance shall be maintained in such amounts and for such periods as the Lender may require. Without limiting the foregoing, this insurance shall be maintained in an amount equal to at least the lesser of (a) the maximum principal amount secured by this Security Agreement plus all amounts secured by mortgages which have priority over this Security Instrument, but in no event shall such insurance be in an amount less than 80% of the full replacement value of the property, or (b) the full replacement value of the property.

The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. All insurance policies and renewals shall be in a form and content acceptable to Lender with such maximum deductible clauses as the Lender may require, and shall include a standard mortgagee clause in favor of and in a form acceptable to the Lender. The Lender shall have the right to hold the policies and renewals subject to the terms of any Senior Mortgage.

All insurance policies and renewals shall provide that they may not be canceled without ten (10) days' prior written notice to Lender. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by the Borrower.

Unless Lender and Borrower otherwise agree in writing, or unless otherwise required under the terms of any Senior Mortgage, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible and the Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If the Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim for insurance benefits, then the Lender may collect and apply the insurance proceeds. The Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in *Paragraph 2* above or change the amount of the payments. If under *Paragraph 18* below, the Property is acquired by the Lender, the Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to the Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**7. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, but only to the extent not actually paid to the holder of any Senior Mortgage, Borrower shall at any time if requested by Lender pay to Lender on the day monthly payments are due under the Agreement a sum ("Funds") for: (a) Impositions all or part of which may attain priority over this Security Instrument as a lien on the Property; (b) yearly hazard or property insurance premiums; (c) yearly flood insurance premiums, if any; (d) yearly mortgage insurance premiums, if any; and (e) any sums payable by Borrower to Lender, in accordance with the provisions of *Paragraph 9* in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law

BOOK 19438 PAGE 319

requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. In the event Lender collects funds pursuant to this *Paragraph 7*, Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under *Paragraph 18*, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**8. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds, Condominiums; Planned Unit Developments.** The Borrower shall keep the property in good repair and shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. The Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.

The Borrower shall also be in default if the Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Lender (or failed to provide the Lender with any material information) in connection with the loan evidenced by the Agreement.

If this Security Instrument is on a unit in a condominium or a planned unit development, the Borrower shall perform all of the Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**9. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture to enforce laws or regulations), then the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. The Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, paying any premiums for insurance required hereunder or under the Agreement, entering on the Property to make repairs and incurring any administrative costs or expenses in connection with the foregoing actions. Although the Lender may take action under this *Paragraph 9*, the Lender does not have to do so.

Any amounts incurred by the Lender under this *Paragraph 9* shall become additional debt of the Borrower secured by this Security Instrument. Unless the Borrower and the Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the variable rate of interest applicable to the Agreement, and shall be payable, with interest, upon notice from the Lender to the Borrower requesting payment.

If the Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, the Borrower shall pay the premiums required to maintain the mortgage insurance in effect until such time as the requirement for the insurance terminates in accordance with the Borrower's and the Lender's written agreement or applicable law.

**10. Inspection.** The Lender or its agent or independent contractor may make reasonable entries upon and inspections of the Property.

**11. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender, subject to the terms of any Senior Mortgage.

In the event of a total taking of the Property, subject to the terms of any Senior Mortgage, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless the Borrower and the Lender agree in writing or otherwise required under the terms of any Senior Mortgage, the proceeds shall at the option of the Lender be applied towards the amounts secured hereby in such order as the Lender may determine or toward the repair, rebuilding or restoration of the Property upon such conditions as the Lender may require, or toward both of such purposes.

If the Property is abandoned by the Borrower, or if, after notice by the Lender to the Borrower that the condemnor offers to make an award or settle a claim for damages, the Borrower fails to respond to the Lender within thirty (30) days after the date the notice is given, the Lender is authorized, subject to the terms of any Senior Mortgage, to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless the Lender and the Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments due under the Agreement or change the amount of such payments.

**12. Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. The Lender's forbearance in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers; Captions.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of the Lender and the Borrower, subject to the provisions of *Paragraph 17* below. The Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Mortgage; (b) is not personally liable under the Agreement or under this Mortgage, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Mortgage or the Agreement without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to the Borrower's interest in the Property.

**14. Notices.** Any notice to the Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by registered or certified mail, return receipt requested, unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address the Borrower designates by notice to the Lender. Any notice to the Lender shall be given by registered or certified mail, return receipt requested, to Lender's address stated in this Security Instrument or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to the Borrower or the Lender on the date of delivery, refusal or non-delivery indicated on the return receipt.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Agreement are declared to be severable.

**16. Borrower's Copy.** The Borrower shall be given one copy of the Agreement and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower; Assumption.** If the Borrower sells or transfers all or

BOOK 19438 PAGE 320

any part of the Property or any interest in the Property (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at the Lender's option, terminate the rights of the Borrower to request Future Advances from the Lender pursuant to *Paragraph 1* above, and require immediate repayment in full of all sums secured by this Security Instrument, unless prohibited by applicable law. This Security Instrument may not be assumed without the Lender's prior written consent. The Lender does not have to give this consent to the Borrower.

**18. Acceleration; Remedies.** The Borrower shall be in default under this Security Instrument upon the occurrence of (i) any failure to make any payment under the Note or this Security Instrument when due, (ii) fraud or material misrepresentation by the Borrower in connection with the debt evidenced by the Note, or (iii) any breach by the Borrower, whether by action or inaction of any terms of this Security Instrument or the Note which adversely affect the Property or the Lender's rights in the Property, including without limitation any breach of the STATUTORY CONDITION. To the full extent permitted by law, upon a default by Borrower, the Lender may (i) require immediate payment in full of all sums secured by this Security Instrument, without demand or notice, except as expressly prohibited by applicable law, and/or (ii) invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. The Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this *Paragraph 18*, including, but not limited to, reasonable attorneys' fees, costs of title evidence, abstracts and title reports.

If the Lender invokes the STATUTORY POWER OF SALE, the Lender shall mail a copy of a notice of sale to the Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. The Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. The Lender or its designees may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (i) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees, (ii) to all sums secured by this Security Instrument, and (iii) any excess to the person or persons legally entitled to it.

**19. Assignment of Rents; Appointment of Receiver.** As additional security under this Security Instrument, the Borrower assigns to the Lender the rents of the Property. However, the Borrower shall, prior to the acceleration under *Paragraph 18* above or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under *Paragraph 18* above or abandonment of the Property, the Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due and in general to deal with any leases, tenacies or occupancies with the same power and discretion which the lessor thereunder or owner of the Property would have. Any rents collected by the Lender, its agents or the receiver shall be applied first to payment of the cost of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums or receiver's bonds and reasonable attorney's fee, and then to sums secured by this Security Instrument. The receiver shall be liable to account only for those rents actually received.

**20. Hazardous Substances.** The Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances (as hereinafter defined) on or in the Property. The Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law (as hereinafter defined). The preceding two sentences shall not apply to the lawful presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

The Borrower shall give the Lender prompt written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal of any Hazardous Substance affecting the Property is necessary, the Borrower shall promptly take all necessary actions in accordance with Environmental Law.

As used in this *Paragraph 20*, "Hazardous Substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this *Paragraph 20*, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Loan Charges.** If the Agreement is subject to a law which sets maximum loan charges, and the law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal owed under the Agreement or by mailing a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Agreement.

**22. Release.** Upon repayment in full of all sums due under the Agreement and all other sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. The Borrower shall pay any recordation costs.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and all rights of curtsey and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument (Check applicable box(es))

☐ Condominium Rider

☐ 1-4 Family Rider

☒ Other(s) [specify]      Exhibit "A"

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

The Borrower and the Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to the Lender, at the Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BOOK 19438 PAGE 321

IN WITNESS WHEREOF, Borrower has executed the Mortgage as of the date first written above as an instrument under seal.

Witness to Each:

_____    _____(Seal)
Keith W. Michon                     Ronald Cavaliere              —Borrower

                                    _____(Seal)
                                    Debra Cavaliere               —Borrower

                                    _____(Seal)
                                                                  —Borrower

                                    _____(Seal)
                                                                  —Borrower

**Commonwealth of Massachusetts**
                                                ss:
County of _____Middlesex_____

On **December 11, 1997**, before me personally appeared **Ronald Cavaliere and Debra Cavaliere**, to me known to be the person(s) described in and who executed the forgoing instrument, and acknowledged that he/she/they (i) executed the same for the purposes therein contained, and (ii) executed this instrument as his/her/their free act and deed.

_____(Seal)
Keith W. Michon                —Notary Public

(official Seal)                My Commission Expires: **November 23, 2001**

FIPCO
WBA FINANCIAL INSTITUTION PRODUCTS CORPORATION®